IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STRUCTURAL GROUP, LLC | * | |
| | * | |
| | * | |
| v. | * | Civil No. CCB-14-78 |
| | * | |
| | * | |
| FYFE CO., LLC | * | |
| | * | |
| | * | |
| | ******** | |

**MEMORANDUM**

Plaintiff Structural Group, LLC filed this action for declaratory judgment and breach of contract against Fyfe Co., LLC in connection with a dispute between the parties about their respective rights and obligations under a Private Labeling Agreement ("PLA"). Hours after Structural filed this action, Fyfe brought a parallel action raising the same issues in the U.S. District Court for the Southern District of California ("the Fyfe California Action"). The parties also are engaged in a 2013 lawsuit in this district stemming from the departure of several Fyfe employees to join Structural ("the Fyfe Maryland Action"). The Fyfe Maryland Action includes claims against Structural for violating the PLA as well as various breach of contract and tort claims against the individual defendants.

Now pending before the court are several motions. First, Fyfe moves to dismiss this action for improper venue or, in the alternative, to transfer the lawsuit pursuant to 28 U.S.C. § 1404(a). (ECF No. 8.)[1] Second, Structural moves for summary judgment on the issue that ever since Fyfe revoked a license it had previously granted to Structural, the PLA provision

---

[1] Additionally, Structural moves to strike part of the declarations supporting Fyfe's motion to dismiss or transfer the action. (ECF No. 18.)

requiring Structural to purchase all its FRP products from Fyfe is no longer binding. (ECF No. 19.) Third, in opposition to Structural's summary judgment motion, Fyfe moves pursuant to Fed. R. Civ. P. 56(d) to deny, defer, or continue Structural's motion for summary judgment until Fyfe has had an opportunity to conduct discovery. (ECF No. 28.)

## BACKGROUND

Fyfe manufactures construction strengthening system products, including Fiber Reinforced Polymer ("FRP") systems, used for strengthening, repair, and restoration of masonry, concrete, steel, and wooden structures. Fyfe is organized under the laws of Delaware, and its headquarters is located in San Diego, California. Structural is a Maryland corporation engaged in specialty construction, repair, and maintenance services.

In November 2011, Fyfe and Structural entered into the PLA. The PLA provides in relevant part that:

> Structural agrees to exclusively promote, purchase, install the Fyfe tyfo® FRP systems including all system compatible materials only as defined by the terms of this agreement and further agrees not to compete with Fyfe or purchase from other vendors without prior written authorization from Fyfe during the terms of this agreement except where Fyfe Products are specifically excluded or not approved.

(Private Label Agreement, ECF No. 12-1.) The PLA also provides that the term of the agreement is five years unless a different term is expressly noted. (Compl. ¶ 9, ECF No. 1.) The PLA separately grants Structural a license to use Fyfe products and patents to perform work on Water and Waste Water Transmission projects ("WWWT projects"). The PLA expressly notes that the term for the WWWT license is two years and that Fyfe may elect not to renew the license if it gives Structural six months' notice. (Compl. ¶ 8.)

In January 2013, Fyfe and two related companies initiated the Fyfe Maryland Action against Structural and several individual defendants. In that lawsuit, which is still pending

before this court, Fyfe asserts various breach of contract and tort claims against Structural and the individual defendants arising from the individual defendants leaving their jobs at Fyfe and related companies to join Structural. One of the claims against Structural arises from the PLA's non-competition provision, which is located in the same paragraph as the exclusive dealing provision referenced above.

In March 2013, while the Fyfe Maryland Action was ongoing, Fyfe notified Structural that it intended to terminate the WWWT license effective October 1, 2013, and Fyfe purportedly terminated the license on that date. (Compl. ¶ 13.) Then in December 2013, Structural notified Fyfe that it believed it could buy its WWWT products from another source because the WWWT license had been revoked. (*Id.*) In response, Fyfe maintained that the other provisions of the PLA remained effective after it revoked the WWWT license, so Structural was contractually obligated for the full five-year term to purchase all its FRP products from Fyfe. (*Id.*) Structural disagreed, however, and proceeded to purchase the materials it needed for WWWT projects from a new supplier. (Compl. ¶ 14.)

Based on the parties' divergent understandings of their obligations under the PLA, Structural filed this action seeking a declaratory judgment or alternatively claiming that Fyfe breached its contractual obligations from the PLA. Just hours after Structural filed the complaint in this case, Fyfe filed its complaint in the Fyfe California Action in the Southern District of California.

On April 30, 2014, the district court in the Fyfe California Action granted Structural's motion to dismiss the complaint pursuant to the first-to-file rule. (*See* Thomas Strong Letter to the Court (April 30, 2014), ECF No. 32.) The district court concluded that the first-to-file rule applied to both the Fyfe Maryland Action and to the instant case. The court reasoned that the

rule applied to the Fyfe Maryland Action because Fyfe filed the complaint in that case one year prior to the Structural Maryland Action and the parties and issues raised in the two cases were substantially similar.  As to the similarity of issues, the court emphasized that both cases required interpretation of the same provision in the PLA that contained the non-competition and exclusivity provisions.  The court also held that the first-to-file rule applied to the instant action because Structural filed its complaint in this case first and because declining jurisdiction was in the interest of judicial efficiency and avoiding duplicative litigation.

## DISCUSSION

### I.  Venue

#### A.  Improper Venue

In diversity cases, venue is proper in, among other places, "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  The plaintiff bears the burden of establishing that venue is proper when venue is challenged by a motion to dismiss.  *See Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 679 (D. Md. 2010).  But when no evidentiary hearing is held, the plaintiff must only make out a prima facie case of venue.  *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004).  Additionally, "all inferences must be drawn in favor of the plaintiff, and the facts must be viewed as the plaintiff most strongly can plead them."  *Jones*, F. Supp. 2d at 680 (internal quotation marks and citations omitted).  Under § 1391(b)(2), "it is possible for venue to be proper in more than one judicial district."  *Mitrano*, 377 F.3d at 405.

In breach of contract claims, such as this one, "courts consider a number of factors, including where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred."  *Largotta v. Banner Promotions, Inc.*, 356 F. Supp. 2d 388,

390 (S.D.N.Y. 2005) (internal quotation marks and citations omitted); *see also Choice Hotels Intern., Inc. v. Madison Three, Inc.*, 23 F. Supp. 2d 617, 622 (D. Md. 1998) (holding that venue in Maryland was proper because the agreements at issue were formed in Maryland and the plaintiff performed its contractual duties in Maryland). Here, the Structural employees who negotiated the PLA reside or work in Maryland, its CEO executed the PLA in Maryland, it ordered Fyfe's products from its Maryland office, and it sent payments from its Maryland office to California. (*See* Emmons Decl. ¶¶ 2, 4, ECF No. 17-2.) The fact that Fyfe and its representatives engaged in corresponding activities in California does not change the fact that a substantial number of events occurred in Maryland.

Fyfe's arguments to the contrary are unpersuasive. Fyfe relies on *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 841–42 (9th Cir. 1986) to argue that venue in cases involving breach of contract claims is proper in the place of intended performance, which Fyfe contends is the Southern District of California. The court in *Decker*, however, relied on the old version of the venue statute which required courts to determine the single district where the claim arose. *Id.* Conversely, the current version of the venue statute provides that venue may be proper in a number of districts, so long as a substantial part of the events giving rise to the claim took place in the district. *See Mitrano*, 377 F.3d at 405. Therefore, *Decker* does not undermine the court's conclusion that venue is proper in this district even if it may support the conclusion that venue also would be proper in the Southern District of California.

Because a substantial part of the events giving rise to this action occurred in Maryland, venue is proper under § 1391(b)(2). Accordingly, Fyfe's motion to dismiss will be denied.[2]

---

[2] Because venue is proper under § 1391(b)(2), it is not necessary to address the parties' arguments about whether venue is also proper under § 1391(b)(1). Nor is there any reason to address the parties' arguments regarding the first-to-file rule. It is undisputed that the first action

B.     **Transfer of Venue**

Fyfe alternatively moves to transfer this action to the Southern District of California pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  To obtain a transfer under § 1404(a), a defendant bears the burden of showing "by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771 (D. Md. 2004) (internal quotation marks and citations omitted).  Notably, this burden cannot be satisfied by mere assertions from counsel or conclusory affidavits.  *See Helsel v. Tishman Realty & Const. Co., Inc.*, 198 F. Supp. 2d 710, 712 (D. Md. 2002).  Rather, "the defendant should submit affidavits from witnesses and parties involved that explain the inconvenience and hardship he would suffer if the case were heard in the plaintiff's chosen forum." *Strategene*, 315 F. Supp. 2d at 771 (internal quotation marks and citations omitted).

Courts consider numerous factors in determining whether a defendant has met its burden under § 1404(a), including: "(1) the plaintiff's choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest

---

relevant to the first-to-file analysis was filed in Maryland—the dispute is only whether the Fyfe Maryland Action should be considered in the analysis.  The first-to-file analysis does not alter my conclusion that venue is proper here and that transfer would not serve the interests of justice or increase the convenience of the parties.

in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws." *Id.* (internal quotation marks and citations omitted). The balance of factors must be "strongly in favor of the defendant" to justify disturbing the plaintiff's forum choice and transferring the action. *Structural Pres. Sys., LLC v. Andrews*, 931 F. Supp. 2d 667, 676 (D Md. 2013) (quoting *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984)).

Most of the factors raised by the parties weigh decidedly against transfer. First, "a plaintiff's choice of forum is given considerable weight unless none of the conduct complained of occurred in the forum and the forum has no connection with the matter in controversy." *Cole-Tuve, Inc. v. Am. Mach. Tools Corp.*, 342 F. Supp. 2d 362, 370 (D. Md. 2004). This is especially true when a plaintiff chooses its home as the forum because "it is reasonable to assume that this choice is convenient." *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 473 (D. Md. 2008) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)). Here, as discussed earlier, a substantial number of events giving rise to this action occurred in Maryland and Structural is a Maryland resident. Accordingly, Structural's choice of forum is entitled to substantial weight.

Nor does the convenience of the witnesses factor support transferring the action. The convenience of the witnesses is "[p]erhaps the most important factor to be considered by a court in passing on a motion to transfer." *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md. 2000). But to show inconvenience, parties must submit detailed affidavits from the witnesses explaining the extent of that inconvenience. *Helsel*, 198 F. Supp. 2d at 712 (internal alterations, quotation marks, and citations omitted). Assertions from counsel that litigation in the plaintiff's chosen forum is inconvenient generally are insufficient to meet the

defendant's burden. *See id.* Here, Fyfe's counsel has asserted that litigating this case in Maryland would be inconvenient for two non-party witnesses, Ed Fyfe and Heath Carr, but this assertion carries little weight. Absent are affidavits from these witnesses detailing their hardship, and the court has little information about the substance and materiality of their expected testimony. Moreover, the Fyfe Maryland Action will proceed in this district regardless of the outcome of Fyfe's motion to transfer, and it appears that at least some of the same witnesses will appear in both cases. *Cf. Mamani*, 547 F. Supp. 2d at 474 (transferring action in part because a second lawsuit was proceeding in the transferee district and consolidating the actions there would save the witnesses time and money). Finally, although some of Fyfe's witnesses do not reside in Maryland, Structural's witnesses do. In such cases, transfer is inappropriate because transfer would only "shift the balance of inconvenience." *TECH USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 861 (D. Md. 2009) (internal quotation marks and citations omitted).

Relatedly, Fyfe's argument that the action should be transferred because Ed Fyfe and Carr live beyond the court's subpoena power is unpersuasive. As Structural points out, the question is not simply whether compulsory process is available for every witness; rather, the issue is whether compulsory process is available to obtain the testimony of unwilling witnesses. *See Samsung Electronics Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 719 (E.D. Va. 2005). In the absence of affidavits to the contrary, there is little reason to think either Ed Fyfe or Carr is unwilling to participate in this litigation if it proceeds in Maryland. Both Ed Fyfe and Carr are recently retired Fyfe executives, so they presumably are not hostile to Fyfe's case. Moreover, Ed Fyfe has already agreed to participate in a deposition in California for the Fyfe Maryland Action.[3] (Chammas Decl. ¶ 12, ECF No. 17-1.)

---

[3] Because Fyfe's arguments regarding the convenience of the witnesses and the availability of

Fyfe also argues that relative docket congestion in the two districts favors transfer, but for every statistic Fyfe cites to support its argument, Structural presents an opposing statistic showing that this district is at least equally well-positioned if not better-positioned to take on additional civil cases. Accordingly, this factor is neutral and does not support transfer.

The only factor that supports transfer is the PLA's requirement that California law governs disputes under the agreement. The law at issue in this case, however, is not especially complex, and federal courts in diversity cases often are called on to apply state laws from other states than the one in which the court is located. Accordingly, this factor does not weigh heavily in favor of transfer.

Finally, the presence of the Fyfe Maryland Action weighs against transfer. As the district court in the Fyfe California Action recognized, both cases require the court to interpret the same provision of the PLA. Transferring the case creates an unnecessary risk of inconsistent and conflicting outcomes. It also would run counter to the interest of judicial efficiency because the court is already familiar with the relationship between the parties and the nature of their dispute.

In sum, the preponderance of the evidence weighs against transfer. Accordingly, Fyfe's motion to transfer will be denied.

## II.     Summary Judgment

Also before the court is Structural's motion for summary judgment. Instead of filing an opposition to the motion, Fyfe moved pursuant to Rule 56(d) to deny the motion or defer the court's ruling on the motion until after discovery. For the following reasons, Fyfe's motion will be granted.

---

compulsory process miss the point, Structural's motion to strike the declaration of Kevin Medley will be denied as moot. There is no reason for me to decide whether the declaration submitted in support of the motion to transfer must be based on personal knowledge because this information has no bearing on the outcome of the motion to dismiss or transfer.

### A.     Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (internal quotation marks omitted).

Generally, parties are entitled an opportunity to conduct discovery on essential issues in their case prior to a court's decision to grant summary judgment. *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (internal alterations, quotation marks,

and citations omitted).  A party opposing summary judgment, however, cannot protest about the impropriety of granting a motion for summary judgment before discovery unless it opposes the motion with a Rule 56(d) affidavit "stating that it could not properly oppose a motion for summary judgment without a chance to conduct discovery."  *Id.* (internal quotation marks and citations omitted).  Courts "place great weight on the [Rule 56(d)] affidavit," and mere assertions by counsel in briefs that additional discovery is needed generally are inadequate.  *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996).  Accordingly, the affidavit must specify why discovery is necessary.

  Rule 56(d) motions with supporting affidavits are "broadly favored and should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose."  *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013).  Additionally, "[a] Rule 56(d) motion must be granted 'where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'"  *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483–84 (4th Cir. 2014) (quoting *Harrods*, 302 F.3d at 244).  But if the additional evidence that would be gained from discovery would not itself create a genuine issue of material fact, the Rule 56(d) motion should be denied.  *Strag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006) *aff'd*, 266 F. App'x 274 (4th Cir. 2008).

  **B.**  **Analysis**

  Structural filed its motion for summary judgment in this case before either side has taken any discovery.  According to Structural, summary judgment should be granted because it should

prevail under any interpretation of the PLA and facts of this case.[4]  Structural first argues that the parties intended that the PLA's exclusive dealing term was always meant to coincide with the two-year license term for WWWT Projects.  Therefore, when Fyfe terminated the license, the exclusive dealing requirement also terminated.  Alternatively, Structural argues that Fyfe repudiated the PLA by breaching its duty to act in good faith and use best efforts by holding Structural to its contractual obligation to buy all its FRP products from Fyfe but withholding the WWWT license.  Finally, Structural argues that the PLA is void for lack of mutuality of obligation because Fyfe is now asserting that Structural must continue to fulfill all its FRP needs through Fyfe but Fyfe is not required to sell all the FRP products that Structural needs.

   Fyfe responded with a Rule 56(d) motion supported by an affidavit from its counsel.  The affidavit specifies why discovery is necessary before the court decides the issues raised in the summary judgment motion.  First, Fyfe plans to conduct discovery to ascertain the parties intent when they executed the PLA to show that the exclusive dealing provision was meant to have a five-year term even if the WWWT license was revoked or not renewed.  (Lamping Decl. ¶ 5, ECF No. 28-2.)  Such discovery would include deposing Structural's representatives who negotiated the PLA, gathering documentary evidence, and providing affidavits or taking depositions of Fyfe's representatives who negotiated the PLA.  Second, the affidavit explains that discovery is necessary to show that Structural may use FRP products on its WWWT projects without the license and not infringe Fyfe's patents.  (Lamping Decl. ¶ 6.)  According to Fyfe, discovery will show that Structural has in the past used FRP products on WWWT projects using methods other than those covered by Fyfe's patents.

   Fyfe has easily satisfied its burden under Rule 56(d).  Fyfe's affidavit identifies specific

---

[4] Structural does not contend the contract is unambiguous.

issues it would explore during discovery.  If the facts are as Fyfe has alleged, there would be a genuine dispute of material fact.  Specifically, if discovery shows that the parties intended the PLA's five-year term to continue even if Fyfe decided not to renew the WWWT license, Structural's assertion to the contrary would be disputed.  And if discovery further shows that Structural can and indeed has performed its WWWT projects without using patented processes covered by the license, such evidence undercuts Structural's core argument that Fyfe is holding Structural hostage by insisting that Structural continue to buy all its FRP products from Fyfe but failing to supply everything Structural needs to effectively use those products.  Therefore, because Fyfe has not had an opportunity to explore these issues in discovery and because it properly opposed the summary judgment motion with a Rule 56(d) motion supported by a sufficiently specific affidavit, Fyfe's motion to deny the motion for partial summary judgment will be granted.

## **CONCLUSION**

For the reasons stated above, Fyfe's motion to dismiss or transfer this case to the Southern District of California will be denied.  Fyfe's Rule 56(d) motion will be granted, and consequently, Structural's motion for summary judgment will be denied.  A separate order follows.

<u>August 11, 2014</u>                                               <u>        /s/        </u>
          Date                                                                Catherine C. Blake
                                                                              United States District Judge